UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

OLUKAYODE DAVID OJO,

                Plaintiff,                        **MEMORANDUM & ORDER**
                                                             20-CV-4882 (MKB)

                v.

UNITED STATES OF AMERICA, UNITED
STATES DEPARTMENT OF JUSTICE,
RICHARD P. DONOGHUE, and
BETH P. SCHWARTZ,

                Defendants.

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Olukayode David Ojo, proceeding *pro se* and currently incarcerated at Buffalo Federal Detention Facility, commenced the above-captioned action on October 8, 2020 against the United States of America, the United States Department of Justice, Richard P. Donoghue, and Beth P. Schwartz under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* (the "FTCA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). (Compl., Docket Entry No. 1.)  Plaintiff asserts that his restitution debt from a criminal case was wrongfully referred to the Treasury Offset Program ("TOP"), without notice and in the incorrect amount, and that his settlement and tax refunds were garnished under the TOP.  (*Id.* ¶¶ 41–48.) The Court grants Plaintiff's application to proceed *in forma pauperis* ("IFP") for the purposes of this Memorandum and Order.  (Mot. for IFP, Docket Entry No. 2.)

For the reasons set forth below, the Court dismisses the action against Donoghue, Schwartz, and the United States Department of Justice. The action may proceed against the United States.

## I. Background

Plaintiff was arrested on July 11, 2011, pursuant to a traffic stop, and after agents from the Federal Bureau of Investigation searched his car, the United States criminally charged and ultimately convicted him of attempted conspiracy to commit wire fraud pursuant to 18 U.S.C. §§ 1349 and 1343 and conspiracy to possess with intent to unlawfully use five or more false identification documents pursuant to 18 U.S.C. §§ 1028(f), (b)(2)(B), (c)(3)(A), (c)(3)(B), and (a)(3). (Compl. ¶¶ 16–19); Judgment, *United States v. Ojo*, No. 13-CR-334 (E.D.N.Y. Feb. 27, 2014) ("Criminal Proceeding"), Docket Entry No. 75. As part of his sentence, Plaintiff was ordered to pay restitution in the amount of $92,152.[1] (Compl. ¶ 24.) Plaintiff now asserts that the traffic stop, arrest, search, conviction, and restitution order were unconstitutional. (*Id.* ¶¶ 16–25.)

Plaintiff was released from the custody of the Federal Bureau of Prisons on March 14, 2014, and detained by the Department of Homeland Security from March 14, 2014 to April 7, 2015. (*Id.* ¶ 27.) After he was released from custody on April 7, 2015, Plaintiff's probation officers informed him that he was required to make payments to satisfy the restitution judgment.

---

[1] Plaintiff's conviction was affirmed on appeal, *see United States v. Ojo*, 630 F. App'x 83 (2d Cir. 2015), and the district court denied his motion pursuant to 28 U.S.C. § 2255. Criminal Proceeding, Docket Entry No. 93. Although Plaintiff claims that the amount of restitution was reduced to approximately $80,000 on appeal, (Compl. ¶ 28), in affirming his conviction, the Second Circuit noted that the "evidence established a loss of approximately $80,000 suffered by more than [thirty] victims." *Ojo*, 630 F. App'x at 86. Plaintiff has presented no evidence to support his claim that the restitution judgment was modified by the Second Circuit.

(*Id.* ¶ 30.) Although Plaintiff believed that the restitution judgment violated his constitutional rights, he nevertheless attempted to make payments while he was free on bond. (*Id.* ¶ 31.) Plaintiff is currently detained at the Buffalo Federal Detention Facility in the custody of the Department of Homeland Security. (*Id.* ¶ 11.)

Plaintiff commenced a civil action in this Court on October 20, 2015, alleging that he was denied necessary dental care while incarcerated and that the treatment he eventually received was inadequate and left his teeth permanently damaged. (*Id.* ¶ 32.); Complaint, *Ojo v. United States*, No. 15-CV-6089 (E.D.N.Y. Oct. 20, 2015), Docket Entry No. 1. In September or October of 2019, Plaintiff and the United States Attorney's Office for the Eastern District of New York reached a settlement agreement in which the United States agreed to pay approximately $70,000 to settle Plaintiff's claims. (*Id.* ¶¶ 34, 38–39.) At that time, the assigned Assistant United States Attorney (the "AUSA") advised Plaintiff that the settlement amount was subject to offset because of the judgment of restitution. (*Id.* ¶ 35.) Plaintiff informed the AUSA that he did not consent to the offset, as he maintained that "the restitution judgment was unfairly and unjustly obtained" through the use of "false and unlawfully obtained evidence[]." (*Id.* ¶ 36.) Plaintiff told the AUSA that "he is not consenting to the offset of any of his settlement amount because there was no notice, whatsoever, pertaining to the debt, and that the restitution judgment was unjust and unfair, and that he would challenge the restitution judgment in . . . court." (*Id.*) The United States Attorney's Office certified the debt to the TOP "without any notice whatsoever to the Plaintiff," and the entire settlement amount was applied to the restitution judgment.[2] (*Id.* ¶¶ 41–43, 45.) Plaintiff alleges that he did not receive adequate notice of the

---

[2] TOP is a centralized debt collection program, authorized pursuant to the Debt Collection Improvement Act, 31 U.S.C. §§ 3716 *et seq.*, and managed by the United States Department of

offset or opportunity to object. (*Id.* ¶¶ 41, 48, 52, 63–66.) He further alleges that the United States Attorney's Office and Schwartz "provided false certification" and inaccurately described the amount of the debt to the Department of Treasury. (*Id.* ¶¶ 62, 69.)

Plaintiff asserts that during a telephone call, Schwartz "admitted that there was no direct service of notice upon . . . Plaintiff prior to his enrollment under the TOP," and added that the possibility of offset was discussed during settlement negotiations. (*Id.* ¶¶ 50, 52.)

Plaintiff attaches several documents to his Complaint, including: (1) a copy of a claim for damages that he submitted to the United States Department of Justice on February 13, 2020, which he states the agency acknowledged receipt of "but has not yet finalize[d] its processing." (Claim for Damage, Injury, or Death 14–15, annexed to Compl., Docket Entry No. 1; Compl. ¶ 5);[3] (2) a December 19, 2019 letter addressed to him from Donoghue and Schwartz describing the TOP, (Letter dated Dec. 19, 2019, at 16, annexed to Compl., Docket Entry No. 1); (3) correspondence from the Department of the Treasury related to offsets from the Internal Revenue Service ($223.13) and the settlement in the civil action ($70,000) applied to the restitution judgment via the United States Attorney's Office for the Eastern District of New York Financial Litigation Unit, (Letter dated Mar. 11, 2020, at 17–19, annexed to Compl., Docket Entry No. 1); and (4) a copy of the stipulation resolving his prior civil lawsuit, which states that the funds will

---

Treasury, that helps federal agencies collect delinquent debts owed to the federal government. *See Shabtai v. U.S. Dep't of Educ.*, No. 02-CV-8437, 2003 WL 21983025, at *2 (S.D.N.Y. Aug. 20, 2003) (citing 31 U.S.C. § 3716 *et seq.*)). Under TOP, federal agencies must give the debtor notice and an opportunity to review a debt before certifying to the Department of Treasury that the debt is eligible for offset. *See* 31 U.S.C. § 3716(a) (general requirements for administrative offset); *id.* § 3720A(b) (procedures for offset of federal debts from federal tax refunds); *Lockhart v. United States*, 546 U.S. 142, 143 (2005) (describing how a portion of plaintiff's Social Security payments were withheld under the TOP to offset his delinquent student loans).

   [3] Because the documents attached to the Complaint are not consecutively paginated, the Court refers to the numbers assigned by the electronic case filing system.

4

be released "provided that [P]laintiff owes no debt that is subject to offset under the [TOP]," (Stipulation of Dismissal 20–26, annexed to Compl., Docket Entry No. 1).

Plaintiff asserts violations of his constitutional rights under *Bivens*, and contends that the United States is liable under the FTCA for the actions of Donoghue and Schwartz, and that Defendants violated the FDCPA because he is a consumer and they are debt collectors within the meaning of the statute. (Compl. 1–2, 12–13.) Plaintiff seeks more than four million dollars in damages, along with declaratory and injunctive relief. (*Id.* at 13.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments they suggest"

(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally" (citing *Erickson*, 551 U.S. at 72)). Nevertheless, the Court is required to dismiss *sua sponte* an in forma pauperis action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

> b.  **Plaintiff's civil rights claims against Donoghue and Schwartz are barred by *Heck***

To the extent that Plaintiff asserts that his arrest, conviction, and restitution order violated his constitutional rights, he may not pursue these claims.

An individual convicted of a crime may not bring a section 1983 suit for damages that "necessarily impl[ies] the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (discussing that plaintiffs may seek damages for "'wrong procedures, [but] not for reaching the wrong result,' [so long as that] procedural defect did not 'necessarily imply the invalidity of' the revocation" (quoting *Heck*, 512 U.S. at 482–83, 487)); *Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. 2017) (quoting *Heck*, 512 U.S. at 487); *Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017) (same). *Heck*'s limitation of section 1983 claims is known as the "favorable termination" rule. *See Victory v. Pataki*, 632 F. App'x 41, 44 (2d Cir. 2016) (noting that *Heck* "specifies that a prisoner cannot use [section] 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)). This rule also applies to *Bivens* actions brought against federal agents. *See Tavarez v.*

6

*Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("Given the similarity between suits under [section] 1983 and *Bivens*, we conclude that *Heck* should apply to *Bivens* actions as well." (citing *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994)); *see also Shue v. United States*, 466 F. App'x 51 (2d Cir. 2012) (affirming dismissal of *Bivens* claims under *Heck*).

Plaintiff has not alleged that his conviction was overturned or otherwise rendered invalid. Accordingly, all of his claims related to his arrest, prosecution, and conviction, including the judgment of restitution, are dismissed pursuant to *Heck*. *See Heck*, 512 U.S. at 487; *see also Duronio v. Werlinger*, 454 F. App'x 71, 72 (3d Cir. 2011) ("[W]e stressed that a direct appeal was the proper path for a challenge of the actual [d]istrict [c]ourt restitution plan, as a *Bivens* remedy would violate the favorable-termination rule of [*Heck*].").

Moreover, any civil rights claims brought against federal officials under *Bivens* are subject to a three-year statute of limitations in cases filed in federal courts within New York State. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) ("Section 1983 actions in New York are subject to a three-year statute of limitations," which "run[s] from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." (first citing *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995); then quoting *Cornwall v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994))); *Polanco v. U.S. Drug Enf't Agency*, 158 F.3d 647, 653 (2d Cir. 1998) (same statute of limitations applies to *Bivens* and section 1983 claims); *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (Section 214(5) of the New York Civil Practice Law and Rules is the applicable statute of limitations for *Bivens* actions brought in federal court in New York State).

Plaintiff was arrested, prosecuted, convicted, and sentenced between 2011 and 2014. Thus, even if Plaintiff's claims related to his 2014 conviction and restitution order were not precluded by *Heck*, they would be untimely. For these reasons, all of Plaintiff's civil rights

claims against Donoghue and Schwartz are dismissed without prejudice.[4]  Moreover, any amendment of these claims would be futile because they are barred by *Heck*.  *See Kevilly v. New York*, 410 F. App'x 371, 375 (2d Cir. 2010) (holding that although some of the plaintiff's claims were not time-barred, amendment would nevertheless have been futile because his timely claims were *Heck*-barred).

      **c.  Plaintiff cannot bring an FDCPA claim against Defendants, but his FTCA claim against the United States may proceed**

Plaintiff also challenges the subsequent efforts by the United States to collect on the judgment of restitution by referring the judgment to TOP.  Plaintiff acknowledges that he was informed of the amount of restitution he owed and his need to make payments, and was warned that his subsequent settlement might be subject to offset.  (Compl. ¶ 35.)  Although the judgment of restitution has not been overturned or modified, Plaintiff argues that he did not consent to the offset because "the restitution judgment was unjust and unfair."  (*Id.* ¶ 36.)  He now challenges the ability of the United States to use TOP to collect the judgment, relying on the FDCPA and the FTCA.  (*Id.* ¶¶ 7, 87.)

        **i.  FDCPA claims**

Plaintiff's FDCPA claims against the United States and the Department of Justice are barred by sovereign immunity.

"It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for

---

[4] A dismissal on *Heck* grounds is without prejudice.  *See Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) ("Disposition of the case on *Heck* grounds, however, warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" (quoting *Heck*, 512 U.S. at 487)).

jurisdiction.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)); *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) ("Absent a waiver, sovereign immunity shields the [f]ederal [g]overnment and its agencies from suit." (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994))). Waivers of sovereign immunity must be "unequivocally expressed" by statute. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990)); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("The terms of consent to be sued may not be inferred, but must be 'unequivocally expressed'" (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980))); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (holding that a waiver of sovereign immunity "must be unequivocally expressed in statutory text").

### 1. The United States and the Department of Justice

The United States has not waived its sovereign immunity for purposes of FDCPA claims. *See Perry v. Wright*, No. 12-CV-721, 2013 WL 950921, at *5 (S.D.N.Y. Mar. 8, 2013) ("Congress did not waive sovereign immunity by enacting the FDCPA." (quoting *Allen v. U.S. Dept. of Educ.*, 755 F. Supp. 2d 122, 124 (D.D.C. 2010)); *Kozaczek v. New York Higher Educ. Servs. Corp.*, No. 10-CV-107, 2011 WL 3687379, at *3 (D. Vt. Aug. 23, 2011) ("Courts have . . . determined the FDCPA does not contain an express and unequivocal waiver of state sovereign immunity."), *aff'd*, 503 F. App'x 60 (2d Cir. 2012).[5] Therefore, Plaintiff's FDCPA claims

---

[5] In *Kozaczek v. New York Higher Educ. Servs. Corp.*, 503 F. App'x 60, 62 (2d Cir. 2012), the Second Circuit affirmed the lower court's holding but has not otherwise opined on whether Congress waived sovereign immunity in the FDCPA. All other circuit courts that have addressed the issue have concluded that Congress did not waive sovereign immunity when it enacted the FDCPA. *See Williams v. U.S. Dist. Court for Dist. of Newark, N.J.*, 455 F. App'x 142, 143 (3d Cir. 2011) ("Congress did not waive the sovereign immunity of the United States in the FDCPA." (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007)); *Wagstaff*, 509 F.3d at 664 ("[B]ecause the FDCPA does not contain an unequivocal and express

against the United States and the Department of Justice are barred by sovereign immunity, and the Court lacks subject matter jurisdiction over the claims. *See Buczek v. United States*, No. 15-CV-273, 2018 WL 2119587, at *5 (W.D.N.Y. May 8, 2018) (holding that because the FDCPA does not contain a sovereign immunity waiver, the plaintiff's "FDCPA claims must therefore be dismissed for lack of subject-matter jurisdiction"), *appeal dismissed* (July 16, 2018). The Court therefore dismisses this claim without prejudice.

### 2. Donoghue and Schwartz

Plaintiff's claim against Donoghue and Schwartz that they are "debt collectors" and liable under the FDCPA fails because, as government employees acting in the course of their official duties, they are specifically excluded from FDCPA liability.

The FDCPA prohibits certain activities by debt collectors. *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 214 (2d Cir. 2017) ("We have . . . recognized that the 'FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors.'" (emphasis omitted) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))). However, the FDCPA specifically excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(c); *see also Garcia v. Fry*, 186 F. Supp. 3d 228, 232 (D. Conn. 2016) (holding that a defendant who "was attempting to collect debts in the performance of his official duties as a state marshal" could not be sued under the FDCPA); *Perry*, 2013 WL 950921, at *5 (holding that Internal Revenue Service employees acting in the course of their official duties were not debt collectors within the meaning of the FDCPA); *Burgess v. U.S. Dep't of*

---

waiver of sovereign immunity, the district court correctly held that it lacked subject matter jurisdiction in this case.").

*Educ.*, No. 05-CV-98, 2006 WL 1047064, at *5 (D. Vt. Apr. 17, 2006) (holding that, due to the official-duties exception, "an action under the FDCPA cannot be brought against the [federal agency] defendants named in this case").

Plaintiff alleges that he spoke to Schwartz about his debt, (Compl. ¶ 51), but does not allege that Donoghue, who was the United States Attorney at the relevant time, took any specific action. Moreover, in support of his arguments that the Department of Justice is liable under the FTCA, discussed below, Plaintiff argues that Donoghue and Schwartz were acting within the scope of their employment. (*Id.* ¶ 87.) Assuming for the purposes of this Memorandum and Order that Donoghue and Schwartz attempted to collect a debt from Plaintiff, they were doing so in the performance of their official duties as government employees and are therefore not liable under the FDCPA. The Court therefore dismisses Plaintiff's claims against Donoghue and Schwartz without prejudice.

> ii. **FTCA claims**

In support of his FTCA claim, Plaintiff alleges that he was harmed by agency action when the United States Attorney's Office "provided false certification" of his judgment of restitution to the TOP and failed to provide him with adequate notice of the debt and opportunity to review. (*Id.* ¶¶ 62, 69.)

"The United States, as [a] sovereign, is immune from suit unless it waives immunity and consents to be sued." *See Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019), *cert. denied*, 139 S. Ct. 2748 (2019) (mem.); *see also United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *Nordic Vill., Inc.*, 503 U.S. at 33–34)). Under the FTCA, a plaintiff may bring a tort suit against the United States under certain circumstances. *See Cooke*,

918 F.3d at 81. "One such 'limited waiver' of [the United States'] sovereign immunity is provided by the FTCA, which 'allows for a tort suit against the United States under specific circumstances.'" *Id.* (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007))); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) ("In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." (citing 28 U.S.C. § 1346(b)(1))). However, the FTCA precludes tort suits against federal agencies. *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to . . . be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under [the FTCA].") As a result, "[t]he only proper institutional defendant in such an action is the United States." *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991); *see also Leytman v. U.S. Dep't of Homeland Sec. Transp. Sec. Admin.*, 804 F. App'x 78, 79 (2d Cir. 2020) ("Any FTCA claim must be alleged against the United States, not a specific United States agency.").

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see also Cooke*, 918 F.3d at 81; *Adeleke*, 355 F.3d at 153. A "claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) (citing 28 U.S.C. § 2675(a)).

Plaintiff asserts that he filed a tort claim with the Department of Justice more than six months ago, and he alleges that the agency "has not yet finalize[d] its processing." (Compl. ¶ 5.) Because Plaintiff alleges that he filed a claim and the Department of Justice failed to make a

12

final disposition of the claim within six months, Plaintiff may proceed with his FTCA claim against the United States only. The Court dismisses the action against the Department of Justice.

### III. Conclusion

The Court dismisses the action against the United States Department of Justice, Donoghue, and Schwartz without prejudice. The Clerk of Court is respectfully directed to issue a summons against the United States and to send a courtesy copy of this Memorandum and Order to the United States Attorney's Office for the Eastern District of New York. The United States Marshals Service is directed to serve the Summons and the Complaint on the United States.

The Court refers this matter to Magistrate Judge Lois Bloom for pretrial supervision. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: December 9, 2020
      Brooklyn, New York

                              SO ORDERED:

                              ____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge